**STATE OF ARIZONA, Intervenor-Appellant,**

v.

**Ernestine W. HUNT, Appellee.**

**No. 18428.**

United States Court of Appeals Sixth Circuit.

April 4, 1969.

Carl Waag, Asst. Atty. Gen., Phoenix, Ariz., Darrell F. Smith, Atty. Gen., Phoenix, Ariz., on brief for appellant.

Clark Shanahan, Owosso, Mich., and B. J. George, Jr., Ann Arbor, Mich., for appellee.

Before O'SULLIVAN, PHILLIPS and CELEBREZZE, Circuit Judges.

O'SULLIVAN, Circuit Judge.

The State of Arizona, as intervenor, appeals from an order of the United States District Court for the Eastern District of Michigan, entered on October 25, 1967, granting habeas corpus relief to appellee, Ernestine W. Hunt. Appellee has moved to dismiss Arizona's appeal on the ground that Arizona should not have been allowed to intervene.

In March of 1964, in the Superior Court of Pima County, Arizona, sitting at. Tucson, Ernestine W. Hunt, after a jury trial, was convicted, along with her husband, Dr. Maurice Hunt, of aggravated assault and battery upon their five-year old adopted daughter. On October 5, 1965, Dr. and Mrs. Hunt were granted a new trial by the Court of Appeals of Arizona, State v. Hunt, 2 Ariz.App. 6, 406 P.2d 208 (1965).[1] Thereupon, in violation of her appearance bond, she left the State of Arizona and has ever since refused to return there, and has thwarted every effort of Arizona to. obtain her physical presence for trial. The retrial of her case, first set for February 1, 1966, was continued some seven times up to April 25, 1967, chiefly upon the assertions of her Arizona lawyer that Mrs. Hunt was too ill to leave her place of abode in Michigan. She has refused to submit to medical examination by Arizona doctors. Upon her failure to appear for trial or examination, and in March of 1967, Arizona began extradition proceedings to return her to Arizona. During the pendency of these proceedings in Michigan and because Dr. Hunt, appearing through separate counsel and claiming that any further delay would deprive him of his right to a speedy trial, objected to any further continuance, Mrs. Hunt was tried *in absentia* under an Arizona criminal rule permitting it where a defendant is voluntarily absent. She and her husband were on May 3, 1967, again convicted by jury verdict.

The extradition proceeding went forward, the Michigan authorities being advised of Mrs. Hunt's intervening conviction, and after hearings on May 22 and May 23, 1967, the Governor of Michigan, on May 24, honored Arizona's request and a rendition warrant was issued. Admitted to bail, Mrs. Hunt employed M.S.

---

1. The charges against Mrs. Hunt involved serious physical abuses of her daughter. The new trial was granted because of the admission of evidence of physical abuse of the daughter on occasions earlier than the particular offense charged.

A. §§ 28.1264 and 28.1285 [Comp.Laws Mich. §§ 776.7 and 780.1 et seq.] to test the validity of the rendition warrant in the state courts of Michigan. The Circuit Court of Jackson County, Michigan, the Michigan Court of Appeals and the Supreme Court of Michigan denied her any relief. Thereupon, she filed the habeas corpus petition now before us, claiming, *inter alia*, that the Arizona statute permitting her trial *in absentia* offended the Fourteenth Amendment to the United States Constitution. Processing of the rendition warrant was stayed and, on October 25, 1967, the United States District Judge concluded that the conviction of Mrs. Hunt was invalid. He ordered that unless the State of Arizona would make a commitment to vacate the conviction of Mrs. Hunt and grant her a new trial, he would not release her to the Arizona authorities. His opinion is reported as In re Hunt, 276 F.Supp. 112 (E.D.Mich.1967). Upon order of the District Court she has been at liberty upon her personal bond of $1,000.

We reverse.

Preliminarily, we think that the District Judge's characterization of Mrs. Hunt as a helpless victim of attempted oppression by the Arizona courts is misplaced. We fear that this laudable compassion and concern was the product of some wrong impressions. Ernestine Hunt has been treated with rather special patience by Arizona.

Mrs. Hunt was charged in 1964 with what could be fairly characterized as quite aggravated criminal conduct, which occurred in 1963.[2] She and her husband were convicted upon jury trial at which they were represented by retained counsel.[3] At some date after she was granted a new trial, she "jumped bail" and fled to Michigan. She has continued as such fugitive ever since. We are unable to agree with the District Judge's more gentle description of her conduct. He said:

> "While at liberty on appeal bond the petitioner and her husband *absented* themselves from Arizona and established residence in Michigan. This was a *voluntary* departure, in the sense that it was *volitional*, and, although the Arizona court was aware thereof,[4] no steps were taken to return her to the jurisdiction, or to forfeit her bond, until the proceedings hereinafter described." 276 F.Supp. at 113–114. (Emphasis supplied.)

We suppose that every fugitive's flight is a "voluntary departure" and its accomplishment is indeed "volitional". The record does not tell when Arizona became aware that Mrs. Hunt had gone to Michigan. In any event, it learned so when her counsel began to ask for and obtain continuances on and after the first setting of a date for retrial. It is true that no steps were immediately taken to bring her back from Michigan. We cannot, however, criticize the Pima County Court in that, without instituting extradition, it relied upon the word of Mrs. Hunt's Arizona attorney, an officer of that Court, that his client would be present on the various days to which, and to accommodate her, trial was continued. It was not until Mrs. Hunt had flaunted the Arizona Court's order that she appear for a medical examination to ascer-

---

2. See State v. Hunt, 2 Ariz.App. 6, 406 P.2d 208 (1965).

3. On the appeal to the Arizona Court of Appeals, Dr. and Mrs. Hunt were represented by the same counsel. We assume they were also represented at trial by the same counsel. During the long effort thereafter to bring Mrs. Hunt to trial, she and Dr. Hunt were separately represented by retained counsel.

4. For support of the statement that "Arizona was aware thereof" the District

Judge's footnote 3 says: "Testimony of Attorney D'Antonio [Mrs. Hunt's Arizona lawyer] before this Court, Tr. pp. 21–23." From this transcript, we find that the bond under which Mrs. Hunt was at liberty during the appeal, and the applicable rule, provided that she would not depart from Arizona without leave. The assertion that Arizona was aware of her departure *is but one of many gratuitous* and unsupported observations of her counsel.

tain the truth of her Arizona counsel's statement that she was "psychologically in no condition to stand trial" that extradition proceedings were initiated.

Repeated representations were made by Mrs. Hunt's attorney that the condition of her health forbade her going to Arizona. On some occasions, these representations were merely the repetition by Arizona counsel of otherwise unsupported statements made by Mrs. Hunt's Michigan counsel. In only one instance were such representations supported. On one of the numerous adjourned trial dates, November 7, 1966, Mrs. Hunt's counsel filed an affidavit signed on November 2, 1966 by a Michigan doctor which, after describing her need for a hysterectomy, averred:

"Deponent further says that from his examination of Ernestine W. Hunt, as of this date that she is far and much too nervous and under too much stress, and having too much discomfort from her condition, to be able to withstand a trial in Court. If she is compelled to withstand the stress and strain of trial in her present condition it would have a deleterious and serious effect on her physical and mental condition.

"Deponent further says that in his professional opinion if certain tests that he must put her through because she may have diabetes, and certain other tests that he must subject her to and reports and histories that he must obtain from other examinations that she has had, indicate that he may proceed with the surgery as scheduled, then, and in that event, *in his opinion she will be able to withstand a trial in Court in all probability by the 1st of February, 1967.*" (Emphasis supplied.)

This is the only support ever provided for the repeated gratuitous representations by Mrs. Hunt's attorney that illness prevented her appearance in Arizona. No evidence was ever presented that the contemplated operation had not been successfully performed on schedule, or that Mrs. Hunt was not, contrary to her doc-

tor's expectations, sufficiently recuperated by February 1, 1967 to stand trial in Arizona.

Based upon this affidavit's representation, the Arizona judge continued the trial to February 28, 1967. On February 20, 1967, another motion for continuance was made, this time supported only by her attorney's statement that Mrs. Hunt could not appear for trial because of "her physical and psychological condition." Counsel's motion stated that:

"Mrs. Hunt will be examined by a qualified physician in Michigan to confirm this condition."

No such confirmation was provided. The Arizona court, seeking to obtain reliable information as to Mrs. Hunt's condition, then entered an order directing Mrs. Hunt to present herself on March 2, 1967 for examination by two Tucson doctors. This order conformed to Rule 250 of Arizona's Rules of Criminal Procedure, 17 A.R.S. Mrs. Hunt ignored the order, and we do not find that her attorney offered any excuse therefor.

On March 3, 1967, the Arizona court held Mrs. Hunt in contempt for failure to appear as ordered and directed that a bench warrant be issued for her arrest. On March 7, 1967, Mrs. Hunt's Arizona counsel again moved for a continuance, this time for "a four month postponement" averring that she was then a patient in Mercywood Hospital, Ann Arbor, Michigan,

"under the care of a Doctor of Psychiatry; that according to Mrs. Hunt's doctor she is incapable of traveling to Arizona to participate in this trial, and furthermore, that mentally she is incapable of assisting in her defense and she is incapable mentally in standing trial. In view of these facts she respectfully requests the Court that they be granted at least a four months' postponement of the trial in order to enable Mrs. Hunt to effect a recovery to the extent where she will be able to travel to Arizona and to the extent where she will be able to participate in her defense in order to go to trial."

The trial judge again continued the trial, this time to April 25, 1967. Again, other than his own statement, her lawyer offered no support for his averments as to Mrs. Hunt's presence in Mercywood and her physical condition. In the meantime, the extradition proceedings had been instituted and were going forward in Michigan.

On April 25, 1967, the final day set for trial, Mrs. Hunt was no longer hospitalized, having been released from Mercywood Hospital on March 23, but her attorney filed another motion for continuance, this time averring that the extradition proceedings then under way required her presence in Michigan. At no time was it suggested that Mrs. Hunt would waive extradition if accommodated as to a trial date. In addition to this written motion for continuance, Arizona counsel again represented to the Arizona judge that, according to reports received from his associate counsel in Michigan, Mrs. Hunt was physically and mentally unable to stand trial and recited that, although his firm had represented her for ten months, he had never been able to talk with her, either in Michigan or Arizona.

At this final day, April 25, 1967, the County Attorney was willing to consent to a four-month further delay but Dr. Hunt's separate counsel, as he had on several of the hearings for continuance, objected to any further continuance, "and asks leave to file a written objection so that there will be no question as to the objection later." The retrial had now been delayed for upwards of fourteen months from its first setting, and the trial judge observed:

"Well, see the problem I have with that is that Mr. Marquez [Dr. Hunt's separate counsel] is sitting here trying to set everything up so that if there is a conviction, he can appeal *for lack of a speedy trial,* although I do believe he wouldn't be able to prevail, unless he shows somehow that he, the defense, was prejudiced by lack of a speedy trial." (Emphasis supplied.)

Mrs. Hunt's counsel's helpful rejoinder was, "That's his problem." At the conclusion of the hearing on Mrs. Hunt's motion for continuance, the trial judge said:

"IT IS THE FINDING OF THE COURT that Ernestine W. Hunt is voluntarily absent.

"IT IS ORDERED that Mr. D'Antonio's Motion for a Continuance is denied.

"IT IS ORDERED that the State's Motion that the trial proceed as to both defendants and that Ernestine W. Hunt be tried *in absentia* is granted."

The trial went forward in Mrs. Hunt's absence. Dr. Hunt was present with his counsel as was Mr. D'Antonio, appearing for Mrs. Hunt. On May 3, 1967, the jury returned a verdict convicting Dr. Hunt of one of the counts of the Information and Ernestine W. Hunt of aggravated assault and battery upon and contributing to the dependency and delinquency of her adopted daughter.

The Arizona statute relating to trial *in absentia* is identified as Rule 231, Arizona Rules of Criminal Procedure. Subsection A thereof provides that the presence of a defendant charged with a felony is required at all times from arraignment to rendition of a verdict, except as provided in subsection B, as follows:

"If the defendant is voluntarily absent, the proceedings provided by this Rule, except those in paragraphs 1 and 2 of subsection A [1, at arraignment; 2, when a plea of guilty is made], may be had in his absence if the court so orders."

In the Michigan *state* court habeas corpus proceedings to test the validity of the Governor's warrant, Mrs. Hunt challenged the validity, vis-a-vis the United States Constitution, of Rule 231, subsec. B. On July 13, 1967, Circuit Judge Falahee of Jackson County said in dismissing her petition:

"I find, therefore, that this petitioner should test the claimed unconstitutionality of her *in absentia* trial in the

State of Arizona and by the Courts of that State.

"This Court, as a State Circuit Court, does not choose to pass upon the constitutionality of the laws of the State of Arizona when not convinced that the petitioner does not have an adequate remedy in Arizona."

The Michigan Court of Appeals stayed extradition pending its consideration of Mrs. Hunt's application for a writ of superintending control. On August 17, 1967, it set down an order as follows:

"IT IS ORDERED that the complaint for superintending control be, and the same is hereby dismissed.

"IT IS FURTHER ORDERED that the motion for bail be, and the same is hereby DENIED.

"IT IS FURTHER ORDERED that the stay of proceedings entered by this Court on July 13, 1967 shall TERMINATE on September 7, 1967.

"Judge Levin Dissenting."

On September 7, 1967, the Supreme Court of Michigan disposed of Mrs. Hunt's motion for leave to appeal, saying:

"On order of the Court, the application for emergency leave to appeal is considered and the same is DENIED, because no sufficient reason appears why petitioner should not be returned to the demanding State of Arizona. The requests for further stay of extradition proceedings and for admission to bail are DENIED. GCR 1963, 865.1(7).

"O'Hara and Souris dissenting." 378 Mich. at 778.

The habeas corpus proceeding now before us was commenced in the District Court on September 6, 1967. Michigan's custody of Mrs. Hunt under the Governor's Rendition Warrant was defended by its Attorney General at all times, with the amicus curiae help of the Attorney General of Arizona, until entry of the final order here on review. Shortly after the commencement of this habeas corpus proceeding, the Attorney General of Michigan moved for a change of venue to the United States District Court for the District of Arizona, expressing among other reasons that the real party in interest was the State of Arizona.[5] This motion was denied.

There followed two hearings before the District Judge with his final order, entered on October 25, 1965, holding:

"With great deference to, and respect for, the Courts of our sister state, if the State of Arizona certifies to this Court that the Petitioner can and will receive an expeditious trial under the Federal constitutionally applicable principles as hereinabove outlined, Petitioner's return upon a proper requisition will not be prevented by this Court upon the showings here made. Failing such certification and requisition within a reasonable time the writ shall be granted and the Petitioner's discharge ordered. *The writ, as of today, is thus granted, conditioned as above,* and the Petitioner shall be admitted to bail." 276 F.Supp. at 121. (Emphasis supplied.)

On November 8, 1967, following the District Court order, the Arizona Attorney General wrote to the Attorney General of Michigan expressing a desire to appeal to this Court. As far as the record before us discloses, that letter went unanswered and, on November 17, 1967, the Arizona Attorney General dispatched to the Michigan Attorney General papers necessary to appeal from the District Court's order and requested that the Michigan Attorney General sign and file them in the District Court. On November 22, 1967, three days before the last day on which Arizona might seek to have an appeal prosecuted, the office of the Attorney General of Michigan advised Arizona by telephone that it would not

---

5. Mrs. Hunt was then physically present in Michigan and a transfer under 28 U.S.C. § 1404(a) to Arizona would not be proper because Mrs. Hunt was not then in custody in Arizona. Venue in the Arizona District Court could, of course, have been easily arranged with the cooperation of Mrs. Hunt.

undertake the appeal. Thereupon, the necessary papers for appeal were prepared—we assume by the Arizona Attorney General's office—and presented to the District Judge on the eve of the last day upon which notice of appeal could be filed—November 24, 1967. On that date and after advising Mrs. Hunt's attorney by telephone of the filing of these papers, the District Judge granted the intervention in this language:

> "It is hereby ordered that the State of Arizona is made a party herein for the purpose of appeal of the order of this Court made on October 1967."

He also signed and filed a Certificate of Probable Cause and the Notice of Appeal.

On November 27, 1967, Mrs. Hunt's Michigan attorney made a motion to "Set Aside Order Making Arizona a Party for Purpose of Appeal." The District Judge, with some expressed reluctance, denied that motion.

On the day that the record on appeal was filed in this Court—January 16, 1968—Mrs. Hunt's counsel filed here a Motion to Dismiss Appeal and for Denial of Petition for Intervention. A Judge of this Court ordered that such motion be passed and considered with our plenary hearing of the appeal.

We have set out the proceedings had in this matter at the above length believing that the recital of them leads quickly to resolution of the questions involved. We consider four questions: First, should Arizona have been permitted to intervene; second, was Ernestine W. Hunt *involuntarily* absent from Arizona at the time she was tried *in absentia;* third, should the propriety of the involved procedure of the Superior Court of Pima County, Arizona, be first considered by the courts of that state; and, fourth, does Arizona's law providing for trial *in absentia* violate the United States Constitution?

1. *Intervention by the State of Arizona.*

■ We affirm the District Court's order allowing Arizona's intervention and deny appellee's motion made in this Court to dismiss Arizona's appeal. While the formal parties to an habeas corpus proceeding are initially the petitioner, (here Mrs. Hunt), and the respondent custodian of the petitioner, (here the Sheriff of Jackson County, Michigan), the real party in interest in extradition proceedings is the demanding state, here Arizona. In Ornelas v. Ruiz, 161 U.S. 502, 16 S.Ct. 689, 40 L.Ed. 787 (1896), the Republic of Mexico was seeking extradition of persons in the United States who had allegedly committed crimes in Mexico. A United States Court released the alleged suspects. Review was sought by Mexico, the demanding government, through its consul. The Supreme Court said:

> "The official character of [the Mexican Consul] must be taken as sufficient evidence of his authority, and as the government he represented was the real party interested in resisting the discharge, the appeal was properly prosecuted by him on its behalf." 161 U.S. at 507, 16 S.Ct. at 690.

■ Such, in substance, were the holdings in Cleugh v. Strakosch, 109 F.2d 330, 332 (9th Cir. 1940), and in Wacker v. Bisson, 348 F.2d 602, 606 (5th Cir. 1965). Although these cases permitted a foreign nation to appeal from the denial of an extradition warrant, we find no authority to indicate that a different principle should be applied where one of the states of the United States is the appellant. Cf. State v. Parrish, 242 Ala. 7, 5 So.2d 828, 832–833 (1941). We consider that intervention by Arizona, as a real party in interest, was proper under Rule 24(b), Fed.R.Civ.P.

■ Appellee further attacks the District Court order on the ground that Arizona's application was not timely made in that notice of it was served upon petitioner's counsel and presented to and heard by the District Judge on the same day as the order granting it. Rule 24(c), Fed.R.Civ.P., provides that notice of a Motion to Intervene shall be served as provided in Rule 5. That rule requires a five day notice of hearing on all mo-

tions "unless a different period is fixed by these rules or by order of the Court." We consider that under the exigent circumstances above set out the District Judge properly exercised his discretion in hearing the motion and disposing of it on the day it was presented.

Not to have allowed intervention under the circumstances here would, in our view, have been not only an abuse of discretion but an uncalled for affront to the State of Arizona.

2. *Was Mrs. Hunt voluntarily absent from Arizona?*

■ The District Judge made no finding as to the voluntariness of Mrs. Hunt's absence from Arizona, but she urges here that we should find that her absence was involuntary. A contrary finding was made by the Arizona trial judge. From the history we have set out above, we are satisfied that Mrs. Hunt's absence from her trial was deliberate and voluntary.

Three hearings were held before the District Judge in Michigan after this case was started in September, 1967. At none of these hearings did Mrs. Hunt appear and give evidence substantiating the unsupported assertions of her attorneys that ill health was the cause of her long refusal to go to Arizona; neither was her deposition to that effect ever presented. In all events, if she was ill at the time of her trial *in absentia,* surely evidence of such fact could have been provided by Michigan doctors. If it is true that Mrs. Hunt had been hospitalized for mental or physical disorders, or both, she was released more than a month prior to the commencement of her trial *in absentia.*

We repeat our conclusion that the District Court's obvious umbrage at the judicial and prosecutorial officers of Arizona must have been the product of misapprehension of the true situation. Arizona has the right to protect itself from the impositions of "bail jumpers" and to exhibit the sophistication needed to recognize dissembling when it sees it.

Whatever excuses are employed, this lady was, and is, a fugitive from Arizona.

Mrs. Hunt claims that, if extradited to Arizona, irreparable injury will befall her in the form of imprisonment while the appeal of her conviction arduously proceeds through the Arizona courts. We find nothing to justify such assertion. The brief of the Arizona Attorney General avers that his office would respect an order,

"conditioning her [Mrs. Hunt's] return on the assurance that she would be admitted to bail pending the outcome of appeal procedure, and that she will be allowed unrestricted access to the Arizona appeal courts * * *."

Notwithstanding this offer, we would not exact such a condition. We assume that the Attorney General and courts of Arizona will give proper consideration to an application for bail pending appeal.

3. *Should the propriety of the involved procedures of the Superior Court of Pima County, Arizona, be first considered by the courts of that state?*

We consider that the Supreme Court's decision of Sweeney v. Woodall, 344 U.S. 86, 73 S.Ct. 139, 97 L.Ed. 114 (1952), is dispositive of this case. There a fugitive from Alabama, as is Mrs. Hunt here a fugitive from Arizona, was taken into custody by the Sheriff of Cuyahoga County, Ohio, pursuant to extradition proceedings brought by Alabama. The fugitive instituted habeas corpus in the Ohio Court of Common Pleas upon the ground that he had been unconstitutionally dealt with in Alabama and would be so treated again if returned there.

"Invoking the Eighth and Fourteenth Amendments, he asserted that his past confinement had amounted to cruel and unusual punishment, that any future confinement administered by Alabama would similarly be in violation of rights secured to him under the Federal Constitution. Respondent asked that petitioner's efforts to return him to the custody of Alabama be halted

and that he be immediately released." 344 U.S. at 87, 73 S.Ct. at 139.

The fugitive was denied relief at the trial court level and then, as stated by the Supreme Court:

> "This judgment was affirmed by the Ohio Court of Appeals for the Eighth District. In re Woodall, 88 OhioApp. 202, 89 N.E.2d 493. An appeal to the State's Supreme Court was dismissed. Woodall v. Sweeney, 152 Ohio St. 368, 89 N.E.2d 494. This Court denied a petition for certiorari. Woodall v. Sweeney, 339 U.S. 945, 70 S.Ct. 790, 94 L.Ed. 1360." 344 U.S. at 87, 73 S.Ct. at 139.

As here, the fugitive then entered the Federal Courts for habeas corpus relief. The United States District Court for the Northern District of Ohio dismissed the petition. On appeal this Court reversed, remanding the cause to the District Court for a hearing on the merits. Woodall v. Sweeney, 194 F.2d 542 (6th Cir. 1952). Certiorari was granted and this Court was reversed. The Supreme Court said:

> "In the present case, as in the others, a fugitive from justice has asked the federal court in his asylum to pass upon the constitutionality of his incarceration in the demanding state, although the demanding state is not a party before the federal court and *although he has made no attempt to raise such a question in the demanding state.* The question is whether, under these circumstances, the district court should entertain the fugitive's application on its merits.
>
> *"Respondent makes no showing that relief is unavailable to him in the courts of Alabama.* Had he never eluded the custody of his former jailers he certainly would be entitled to no privilege permitting him to attack Alabama's penal process by an action brought outside the territorial confines of Alabama in a forum where there would be no one to appear and answer

for that State. Indeed, as a prisoner of Alabama, under the provisions of 28 U.S.C. § 2254, and under the doctrine of *Ex parte Hawk, supra, he would have been required to exhaust all available remedies in the state courts before making any application to the federal courts sitting in Alabama.*

> "By resort to a form of 'self help' respondent has changed his status from that of a prisoner of Alabama to that of a fugitive from Alabama. But this should not affect the authority of the Alabama courts to determine the validity of his imprisonment in Alabama. The scheme of interstate rendition, as set forth in both the Constitution and the statutes which Congress has enacted to implement the Constitution, contemplates the prompt return of a fugitive from justice as soon as the state from which he fled demands him; these provisions do not contemplate an appearance by Alabama in respondent's asylum to defend against the claimed abuses of its prison system. *Considerations fundamental to our federal system require that the prisoner test the claimed unconstitutionality of his treatment by Alabama in the courts of that State.* Respondent should be required to initiate his suit in the courts of Alabama, where all parties may be heard, where all pertinent testimony will be readily available and where suitable relief, if any is necessary, may be fashioned." 344 U.S. at 88–90, 73 S.Ct. at 141. (Emphasis supplied.)

Aware of its analogy and dispositive authority, the District Judge said of the *Sweeney* case:

> "If the *Sweeney* case stood alone this court would be precluded from granting any relief in the matter before us." 276 F.Supp. at 116.

After saying that *Sweeney* "has never been squarely overruled," the District Judge observes that "much constitutional history has been written since *Sweeney*," and sets out a list of cases that have

been decided after *Sweeney*.[6] We, however, fail to find any of them of controlling relevance to the case at bar. For support of a position that *Sweeney* does not now forbid his conclusion, the District Judge relies primarily upon Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed. 2d 837 (1963), which, according to him, "was intended to strike down much of the prior law accommodating state criminal process to the doctrine of federalism." 276 F.Supp. at 117. While *Noia* has been employed to support a great variety of claims of deprivation of constitutional rights, we find no collision between its holding or its general dissertation and the holding and language of Sweeney v. Woodall, *supra*.

■ Until some use of remedial processes in Arizona has been tried—motion for new trial,[7] vacation of judgment, appeal, habeas corpus in the Arizona state courts or in the United States District Court for the District of Arizona—we should not aid this lady to ignore the courts and laws of Arizona.

#### 4. *Constitutionality of conviction.*

We are of the view that, under the facts of this case, the District Court was not required to pass upon the constitutionality of Arizona's statute permitting trial *in absentia* of a fugitive who is voluntarily absent from the place of trial. Neither need we.

Unconstitutionality should indeed be found in a rule or statute which denies an accused the *right or opportunity* to be present and with counsel to exercise all of his constitutional rights. But Mrs. Hunt was denied neither the right nor the opportunity to exercise hers; and

the accused criminal rule does not condone such denial. Mrs. Hunt chose to *refuse* to exercise her rights and clearly waived them.

Among other reasons, Mrs. Hunt excuses her failure to challenge the constitutionality of the involved statute in the courts of Arizona on the ground that Arizona has already sustained its constitutionality, citing State v. Cumbo, 96 Ariz. 385, 396 P.2d 11 (1964). The constitutionality of the mentioned statute was not there involved nor raised.

Arizona argues that Rule 231 of its Rules of Criminal Procedure, which permits trial *in absentia* in circumstances present here, does not differ substantially from our own Rule 43 of the Federal Rules of Criminal Procedure. Such rule provides, in part:

> "In prosecution for offenses not punishable by death, the defendant's *voluntary absence* after the trial has been commenced in his presence shall not prevent continuing the trial to and including the return of the verdict * * *." (Emphasis supplied.)

■ We find little difference in substance between that rule and the attacked Arizona rule. This lady was present at her first trial and upon remand her attorney was present at every stage of the proceeding, including the trial had in her voluntary absence. The District Court found inapplicable Diaz v. United States, 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1912), and Pearson v. United States, 117 U.S.App.D.C. 52, 325 F.2d 625 (1963). We find them in point upon the principle that voluntary absence from the trial forecloses later claim of constitutional

6. In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); Brookhart v. Janis, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966); Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966); Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964); Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811

(1963); Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

7. Arizona's brief to the District Court averred that Mrs. Hunt's attorneys "did make a motion for new trial, so that her appeal is secured procedurally as a matter of statutory right, if taken within sixty days of the entry of judgment, which has not yet occurred." See Arizona Rules of Criminal Procedure, Rule 348.

deprivation. The District Judge disposes of these cases with the observation that,

> "We need not pass here upon the problem presented occasionally when a criminal defendant seeks to make of his trial a carnival of contempt." 276 F.Supp. at 118.

In our view, the conduct of Mrs. Hunt can easily be equated with the District Judge's phrase, "carnival of contempt."

 There is little disagreement with the general proposition that voluntary absence from a trial, not for a capital offense, waives the right to be present.[8] In Diaz v. United States, *supra,* the Supreme Court quoted with approval the following from Falk v. United States, 15 D.C.App. 446, 454, appeal dismissed, 180 U.S. 636, 21 S.Ct. 922, 45 L.Ed. 709 (1901):

> "It does not seem to us to be consonant with the dictates of common sense that an accused person, being at large upon bail, should be at liberty, whenever he pleased, to withdraw himself from the courts of his country and to break up a trial already commenced. The practical result of such a proposition, if allowed to be law, would be to prevent any trial whatever until the accused person himself should be pleased to permit it. For by the statute (U.S. Rev.Stat. § 1015, U.S.Comp.Stat.1901, p. 718) he is entitled as a matter of right to be enlarged upon bail 'in all criminal cases where the offense is not punishable by death;' and therefore, in all such cases, he may, by absconding, prevent a trial. This would be a travesty of justice which could not be tolerated; and it is not required or justified by any regard for the right of personal liberty." 223 U.S. at 457, 32 S.Ct. at 254.

We are of the opinion that no Fourteenth Amendment or other right of Mrs. Hunt was impaired by what Arizona did in this matter.

The judgment of the District Court is vacated, the writ is discharged and an order shall be there entered directing that Mrs. Hunt be returned to Arizona pursuant to the Michigan Governor's rendition warrant.

---

8. See, 23 C.J.S. "Criminal Law" § 975; State v. Gorman, 113 Minn. 401, 129 N.W. 589, 32 L.R.A.,N.S., 306 (1911); State ex rel. Shetsky v. Utecht, 228 Minn. 44, 36 N.W.2d 126, 6 A.L.R.2d 988 (1949); Parker v. United States, 184 F.2d 488 (4th Cir. 1950); United States v. Noble, 294 F. 689 (D.Mont.1923); United States v. Vassalo, 52 F.2d 699 (E.D.Mich.1931); Cureton v. United States, 130 U.S.App.D.C. 22, 396 F.2d 671 (1968).