**DAVIS v. O'CONNELL,**
Chief of Police et al.

No. 14190.

United States Court of Appeals,
Eighth Circuit.

Dec. 14, 1950.

Rehearing Denied Jan. 25, 1951.

Frank W. Clegg, St. Louis, Mo., for appellant.

John J. Kelly, Jr., Asst. Circuit Atty., for the City of St. Louis, Missouri, St. Louis, Mo. (James W. Griffin, Circuit Atty. for the City of St. Louis, Missouri, St. Louis, Mo., Eugene Cook, Atty. Gen. of the State of Georgia, and M. H. Blackshear, Jr., Deputy Asst. Atty. Gen. of the State of Georgia, on the brief), for appellees.

Before SANBORN, JOHNSEN and RIDDICK, Circuit Judges.

SANBORN, Circuit Judge.

This is an appeal from an order of the District Court discharging a writ of habeas corpus. The effect of the order was to remand the petitioner (appellant) to the custody of the Chief of Police of the City of St. Louis, Missouri, for rendition to an agent of the State of Georgia pursuant to an extradition warrant issued

514

by the Governor of Missouri[1] under Section 3182, Title 18 U.S.C.A.[2]

In his petition for the writ, filed on April 12, 1950, the petitioner alleged: "that he is being illegally and unlawfully restrained of his liberty by the respondents in that he is a citizen of the United States and of African descent and color and is wanted in the State of Georgia for a crime that he did not commit; that he was denied of his rights by the State of Georgia, guaranteed by Article 1, [section 1], paragraph 9 of the Constitution of the State of Georgia adopted in 1877 and re-adopted in 1945; that he was denied his Constitutional rights guaranteed by the Constitution of the United States, Amendments Six, Eight and 14; in that he was subjected to cruel and inhuman treatment by the State of Georgia, its agents and prison guards; that he was beaten, slugged and shot by the prison guards unmercifully; that he was made to work while sick, that

after the killing of Eight Negroes by guards during the month of July, 1947, the inhuman treatment became a night and day program, that he was often told by the guards that he was going to kill him and did actually shoot him with a shotgun."

The petitioner also alleged: "that he was sentenced by the Court of the County of Fulton, State of Georgia for 68 years and placed on the chain gang at Adell, Georgia, that he served almost three years of said cruel and unusual sentence, that he was tried and sentenced by the Court in violation of the 6th Amendment of the Constitution of the United States; in that, he was refused witnesses in his behalf."

The petitioner further alleged that the State of Georgia has made requisition upon the Governor of the State of Missouri "for the arrest and deportation of your petitioner back to said cruel and inhuman treatment and that he would be in danger of losing his life"; that the Governor of

1.       "State of Missouri

To the Sheriff or Marshal of any County or City in this State.

Whereas, the Governor of the State of Georgia has demanded of the Governor of this State, Azell Davis, fugitive from justice from said State; And Whereas, the Governor of Georgia has produced to me a copy of an Indictment in said State certified to be authentic, charging said fugitive with having committed the crime of Assault to Murder (3) cases and Assault With Attempt to Rob (1 case)—

Now, Therefore, I, Forrest Smith, Governor Of The State Of Missouri do hereby command you to arrest the said Azell Davis anywhere within the limits of this State, and Him secure and deliver to Perry F. Mixon and/or Sheriff of Cook County, Georgia, who is the Agent of said State of Georgia duly authorized to receive said fugitive.

And I do hereby command all Sheriff, Marshal, Constables and Police Officers to whom this warrant may be shown to aid and assist in the execution of this process. And you will make due return to me on this warrant of your proceeding thereunder.

In Testimony Whereof, I hereunto set my hand and cause to be affixed the Great Seal of the State of Missouri. Done at the City of Jefferson, this Seventh day of April in the year of our

Lord, One Thousand Nine Hundred and Fifty.

      Forrest Smith
      Walter H. Toberman
      Secretary of State.

(Seal)

      J. Paul Markway,
      Chief Clerk."

2. "§ 3182. *Fugitives From State or Territory to State, District or Territory.*

"Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within thirty days from the time of the arrest, the prisoner may be discharged."

Missouri honored the requisition on April 10, 1950, and that, unless a stay is granted by the court, the extradition warrant "that is void on its face, contrary to law and in violation of every provision of our Federal and State Constitution that protect life and liberty," will result in petitioner's delivery to the officers of the State of Georgia.

The District Court, on April 12, 1950, issued a writ of habeas corpus directed to the respondents, returnable at a later date. The return filed by the Chief of Police of St. Louis on April 18, 1950, asking for a dismissal of the writ, stated: "That the petitioner is in his [the Chief of Police's] custody and under his control, having been arrested on the 12th day of April, 1950, under the authority and by virtue of a Governor's warrant issued by Forrest Smith, Governor of the State of Missouri, on the 7th day of April, 1950." A copy of the warrant was attached to the return.

The petitioner on April 25, 1950, filed a motion to dismiss the return of the Chief of Police, and to declare the warrant issued by the Governor of Missouri void upon the following grounds:

"1. That the return is based upon a warrant issued by the Governor of the State of Missouri on the 17th day of April, 1950, which is bottomed upon a conviction of petitioner by the Fulton County, Georgia Court in violation of his rights guaranteed by the 6th Amendment of the Constitution of the United States.

"2. That said warrant is further void for the reason that he (the petitioner) was subjected to cruel, inhuman and unusual punishment while a prisoner serving the sentence illegally imposed by the Court of the County of Fulton, Georgia, in violation of his rights guaranteed by the 8th Amendment of the Constitution of the United States and Article 1 [section 1], paragraph 9 of the Constitution of the State of Georgia, adopted in the year of 1877 and re-enacted in 1945.

"3. That the warrant is further void for the reason that the petitioner was denied equal protection of the law while a prisoner on the 'Chain Gang System' of the State of Georgia as guaranteed to petitioner by the 14th Amendment of the Constitution of the United States."

The State of Georgia, on April 25, 1950, filed a motion for leave to intervene, stating its interest in the proceeding and that it desired to adopt as its response to the writ the return filed by the Chief of Police, and, in addition, to move the dismissal of the writ. Apparently leave to intervene was granted.

The State of Georgia filed a motion for a dismissal of the writ on the ground that the petitioner was seeking to attack collaterally a judgment of a court of that State, that he had not pursued or exhausted the remedies afforded by the laws of Georgia, and that the petition for the writ failed to state a claim upon which relief could be granted.

On May 25, 1950, the case came on for trial. The petitioner, the Chief of Police, and the State of Georgia were each represented by counsel. The only testimony taken was that of the petitioner tending to substantiate his charges that he was denied due process of law and subjected to cruel and unusual punishment by the State of Georgia.

On June 27, 1950, the District Court entered an order reading as follows:

"Applicant has failed to exhaust all the state remedies available before applying to this Court for a writ of habeas corpus.

"The appellate courts have repeatedly held that such remedies must be exhausted before applying to the Federal Courts. Ex parte Hawk, 321 U.S. 114 [64 S.Ct. 448, 88 L.Ed. 572]; Darr v. Burford, 329 [339] U.S. 200 [70 S.Ct. 587].

"An order is therefore entered sustaining respondents' motion to dismiss and discharging the writ of habeas corpus heretofore allowed and issued and dismissing the petition herein for want of jurisdiction, but not upon the merits."

This appeal challenges the validity of that order.

The order, in substance, conforms to the order which was entered by the Supreme Court of the United States reversing a decision of the Court of Appeals for the

Third Circuit in Johnson v. Dye, 175 F.2d 250, a case which differed in no controlling respect from the instant case. In that case the Court of Appeals, sitting en banc, had, upon grounds similar to those urged here, directed the release of a petitioner, in a habeas corpus proceeding, who was held under an extradition warrant issued by the Governor of Pennsylvania upon a requisition from the Governor of Georgia. The Supreme Court, in 338 U.S. 864, 70 S.Ct. 146, disposed of the Johnson case by the following order:

"Dye, Warden, v. Johnson.

"On petition for writ of certiorari to the United States Court of Appeals for the Third Circuit. Per Curiam: The petition for writ of certiorari is granted and the judgment is reversed. Ex parte Hawk, 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572."

The Supreme Court denied a petition for rehearing. 338 U.S. 896, 70 S.Ct. 238.

Since the case of Ex parte Hawk, 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572, dealt with the necessity of the exhaustion by a state prisoner of his state remedies before applying to a federal court for habeas corpus, it is apparent that the Supreme Court was of the opinion that the petitioner in Johnson v. Dye, supra, was not entitled to a writ because he had not exhausted such remedies. One cannot be certain, however, whether the Supreme Court, in citing Ex parte Hawk as the basis for reversing Johnson v. Dye, meant that one detained under a state extradition warrant could not challenge the validity of his detention under the warrant without exhausting his remedies in the asylum State, or that he could not challenge the validity of his impending incarceration in the demanding State without exhausting all of his state remedies in that State, or that he must have exhausted all state remedies in both states before invoking the jurisdiction of a federal court in a habeas corpus proceeding such as this.

The case of Appleyard v. Massachusetts, 203 U.S. 222, 27 S.Ct. 122, 51 L.Ed. 161, is authority for the proposition that a prisoner detained under a state extradition warrant should exhaust his remedies in the courts of the asylum state before invoking the jurisdiction of a federal court. In that case, the Supreme Court said, 203 U.S. at pages 225–226, 27 S.Ct. at page 123. "* * * Regularly, the accused should have prosecuted a writ of error to the supreme judicial court of Massachusetts [the asylum state] before invoking the jurisdiction of the circuit court of the United States upon habeas corpus. Ex parte Royall, 117 U.S. 241, 251–253, 6 S.Ct. 734, 29 L.Ed. 868, 871, 872; Markuson v. Boucher, 175 U.S. 184, 20 S.Ct. 76, 44 L.Ed. 124; Minnesota v. Brundage, 180 U.S. 499, 502, 21 S.Ct. 455, 45 L.Ed. 639, 640; Reid v. Jones, 187 U.S. 153, 23 S.Ct. 89, 47 L.Ed. 116. But, in view of the long time which has elapsed since the governor of New York made his requisition for the surrender of the accused, and as the case is one which the public interests demand should be speedily determined, we think the ends of justice will be promoted if we proceed to a final judgment on this appeal."

See, also, Ex parte Thompson, D.C. Mass., 21 F.2d 74.

The problem with which we are confronted has been exhaustively dealt with by the United States Court of Appeals of the District of Columbia Circuit in Johnson v. Matthews, 86 U.S.App.D.C. 376, 182 F.2d 677. That court ruled, in substance, that, while habeas corpus is the proper means for testing the validity of an arrest and detention under an extradition warrant, the proceeding relates solely to the legality of that specific detention and cannot be used as a means for testing the legality of the original or the contemplated incarceration of the prisoner by the demanding state. The Court of Appeals also held that a fugitive from justice has no greater or different rights than has an incarcerated prisoner who is obliged to enforce them in the district in which he is confined. The Supreme Court has denied certiorari in Johnson v. Matthews, 71 S.Ct. 65.

It seems obvious to us that a judgment releasing the petitioner in the instant case could not be sustained. A brief statement of our conclusions may be helpful.

■ We think that an orderly administration of justice requires that one in the position of the petitioner, who is challenging the validity of an extradition warrant issued by a governor of a state, should be required to exhaust his state remedies in that state before invoking the jurisdiction of the federal court,—as was indicated in Appleyard v. Massachusetts, 203 U.S. 222, 225-226, 27 S.Ct. 122, 51 L.Ed. 161.

■ It is our opinion that a petition such as that in suit challenges only the validity of the petitioner's detention under the extradition warrant and does not challenge the legality of his original or impending detention in the state demanding his return, —as was held in Johnson v. Matthews, supra, 86 U.S.App.D.C. 376, 182 F.2d 677, 679.

■ It is also our opinion that before such a petitioner may invoke the jurisdiction of a federal court, in a habeas corpus proceeding, to test the legality of the judgment and sentence imposed upon him in the demanding state, he must have exhausted his state remedies in that state, including his remedy by certiorari to the Supreme Court of the United States. This, we think, is clearly indicated by the cases of Ex parte Hawk, 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572; Darr v. Burford, 339 U.S. 200, 70 S. Ct. 587, and Dye v. Johnson, 338 U.S. 864, 70 S.Ct. 146.

■ In the instant case the petitioner does not contend that the extradition warrant was improperly or illegally issued by the Governor of Missouri or that the Governor justifiably could have refused to honor the requisition of the Governor of Georgia. Petitioner's contention is that the incarceration in Georgia, from which he escaped, was illegal and that, if he is delivered to the authorities of Georgia, his future incarceration will be illegal and will jeopardize his life. Those are matters with which we think the District Court was without power to deal. The petitioner's assertion that he will be denied justice in the courts of Georgia cannot enlarge the jurisdiction of a federal court in Missouri.

The order appealed from is affirmed. If the petitioner desires to apply to the Su-preme Court for certiorari, he may do so without the payment of costs or Clerk's fees in this Court.