SWEENEY, SHERIFF, *v.* WOODALL.

No. 100.  , Nov. 17, 1952.

*Frank T. Cullitan* and *Gertrude M. Bauer* for petitioner.

*Frank C. Lyons* for respondent.

*Eugene Cook,* Attorney General, *M. H. Blackshear, Jr.,* Deputy Assistant Attorney General, and *Lamar W. Sizemore,* Assistant Attorney General, filed a brief for the State of Georgia, as *amicus curiae,* supporting the petition.

PER CURIAM.

The respondent is a fugitive from a prison in Alabama. The Governor of that State instituted proceedings for his return, and respondent was arrested in Ohio. Petitioner, the Sheriff of Cuyahoga County, Ohio, now holds respondent for delivery to the authorities of Alabama.

In an attempt to prevent his rendition to Alabama, respondent applied to the Court of Common Pleas of Cuyahoga County for a writ of habeas corpus. He alleged that during his confinement in Alabama he had been brutally mistreated, that he would be subjected to such mistreatment and worse if returned. Invoking the Eighth and Fourteenth Amendments, he asserted that his past confinement had amounted to cruel and unusual punishment, that any future confinement administered by Alabama would similarly be in violation of rights secured to him under the Federal Constitution. Respondent asked that petitioner's efforts to return him to the custody of Alabama be halted and that he be immediately released.

Refusing to hear this claim on its merits, the Court of Common Pleas denied respondent's application. This judgment was affirmed by the Ohio Court of Appeals for the Eighth District. 88 Ohio App. 202, 89 N. E. 2d 493. An appeal to the State's Supreme Court was dismissed. 152 Ohio St. 368, 89 N. E. 2d 494. This Court denied a petition for certiorari. 339 U. S. 945.

Respondent then applied to the United States District Court for the Northern District of Ohio, seeking his release upon the same ground theretofore urged in the Ohio

courts. The District Court dismissed his petition for a writ of habeas corpus without hearing evidence. But the Court of Appeals for the Sixth Circuit reversed, without opinion, remanding the cause to the District Court for a hearing on the merits of the constitutional claim. 194 F. 2d 542. Petitioner has now applied to this Court for a writ of certiorari.

Recently, in *Dye* v. *Johnson*, 338 U. S. 864 (1949), this Court considered a petition for certiorari in a similar case. The Court of Appeals for the Third Circuit had sustained an application for habeas corpus by a fugitive prisoner from Georgia who alleged, as respondent does now, that his confinement in the demanding state amounted to cruel and unusual punishment in violation of his constitutional rights. Presented with a petition for certiorari to review this decision, we reversed, summarily, citing *Ex parte Hawk*, 321 U. S. 114 (1944). Shortly after our decision in the *Dye* case, the Court of Appeals for the District of Columbia Circuit affirmed a District Court's dismissal of a similar petition for habeas corpus from still another fugitive, holding that the federal courts in the asylum should not entertain such applications. *Johnson* v. *Matthews*, 86 U. S. App. D. C. 376, 182 F. 2d 677 (1950).[1]

In the present case, as in the others, a fugitive from justice has asked the federal court in his asylum to pass

---

[1] In other similar cases, the Court of Appeals for the Ninth Circuit, in *Ross* v. *Middlebrooks*, 188 F. 2d 308 (1951), and the Court of Appeals for the Eighth Circuit, in *Davis* v. *O'Connell*, 185 F. 2d 513 (1950), have reached a like result. In *United States ex rel. Jackson* v. *Ruthazer*, 181 F. 2d 588 (1950), the Court of Appeals for the Second Circuit held that a fugitive from Georgia was not entitled to a hearing in the federal courts in his asylum on the ground that the merits had been fully heard in the state courts of the asylum and the fugitive's claim disproved.

upon the constitutionality of his incarceration in the demanding state, although the demanding state is not a party before the federal court and although he has made no attempt to raise such a question in the demanding state. The question is whether, under these circumstances, the district court should entertain the fugitive's application on its merits.

Respondent makes no showing that relief is unavailable to him in the courts of Alabama. Had he never eluded the custody of his former jailers he certainly would be entitled to no privilege permitting him to attack Alabama's penal process by an action brought outside the territorial confines of Alabama in a forum where there would be no one to appear and answer for that State. Indeed, as a prisoner of Alabama, under the provisions of 28 U. S. C. § 2254,[2] and under the doctrine of *Ex parte Hawk, supra,* he would have been required to exhaust all available remedies in the state courts before making any application to the federal courts sitting in Alabama.

By resort to a form of "self help," respondent has changed his status from that of a prisoner of Alabama to that of a fugitive from Alabama. But this should not affect the authority of the Alabama courts to determine the validity of his imprisonment in Alabama. The scheme of interstate rendition, as set forth in both the

---

[2] "An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

"An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."

Constitution [3] and the statutes which Congress has enacted to implement the Constitution,[4] contemplates the prompt return of a fugitive from justice as soon as the state from which he fled demands him; these provisions do not contemplate an appearance by Alabama in respondent's asylum to defend against the claimed abuses of its prison system.[5] Considerations fundamental to our federal system require that the prisoner test the claimed unconstitutionality of his treatment by Alabama in the courts of that State. Respondent should be required to initiate his suit in the courts of Alabama, where all parties may be heard, where all pertinent testimony will be readily available and where suitable relief, if any is necessary, may be fashioned.

The District Court properly dismissed the application for habeas corpus on its face, and the Court of Appeals erred in holding that the applicant was entitled to a hearing in the District Court of Ohio on the merits of his constitutional claim against prison officials of Alabama.

Accordingly, the petition for certiorari is granted, and the judgment of the Court of Appeals is reversed.

*It is so ordered.*

Mr. Justice Frankfurter, concurring.

I join in the Court's opinion because I agree that due regard for the relation of the States, one to another, in our federal system and for that of the courts of the

---

[3] U. S. Const., Art. IV, § 2, cl. 2:

"A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime."

[4] 1 Stat. 302, as amended, 18 U. S. C. § 3281.

[5] Cf. *Drew* v. *Thaw*, 235 U. S. 432 (1914).

United States to those of the States requires that claims even as serious as those here urged first be raised in the courts of the demanding State. Even so, it is appropriate to emphasize that in this case there is no suggestion in the application for habeas corpus that the prisoner would be without opportunity to resort to the courts of Alabama for protection of his constitutional rights upon his return to Alabama. We cannot assume unlawful action of the prison officials which would prevent the petitioner from invoking the aid of the local courts nor readily open the door to such a claim. Compare *Cochran v. Kansas*, 316 U. S. 255. Our federal system presupposes confidence that a demanding State will not exploit the action of an asylum State by indulging in outlawed conduct to a returned fugitive from justice.

MR. JUSTICE DOUGLAS, dissenting.

The petition presents facts which, if true, make this a shocking case in the annals of our jurisprudence.

Respondent, a Negro, was convicted of burglary in Alabama and sentenced to hard labor at a state penitentiary. After six years he escaped and was apprehended in Ohio. Thereafter Alabama undertook to extradite him so that he could be returned to Alabama and serve the balance of his sentence. He thereupon filed this petition for habeas corpus to be released from the custody of petitioner, the Ohio sheriff who presently detains him.

He offered to prove that the Alabama jailers have a nine-pound strap with five metal prongs that they use to beat prisoners, that they used this strap against him, that the beatings frequently caused him to lose consciousness and resulted in deep wounds and permanent scars.

He offered to prove that he was stripped to his waist and forced to work in the broiling sun all day long without a rest period.

He offered to prove that on entrance to the prison he was forced to serve as a "gal-boy" or female for the homosexuals among the prisoners.

Lurid details are offered in support of these main charges. If any of them is true, respondent has been subjected to cruel and unusual punishment in the past and can be expected on his return to have the same awful treatment visited upon him.

The Court allows him to be returned to Alabama on the theory that he can apply to the Alabama courts for relief from the torture inflicted on him. That answer would suffice in the ordinary case. For a prisoner caught in the mesh of Alabama law normally would need to rely on Alabama law to extricate him. But if the allegations of the petition are true, this Negro must suffer torture and mutilation or risk death itself to get relief in Alabama. It is contended that there is no showing that the doors of the Alabama courts are closed to petitioner or that he would have no opportunity to get relief. It is said that we should not assume that unlawful action of prison officials would prevent petitioner from obtaining relief in the Alabama courts. But we deal here not with an academic problem but with allegations which, if proved, show that petitioner has in the past been beaten by guards to the point of death and will, if returned, be subjected to the same treatment. Perhaps those allegations will prove groundless. But if they are supported in evidence, they make the return of this prisoner a return to cruel torture.

I am confident that enlightened Alabama judges would make short shrift of sadistic prison guards. But I rebel at the thought that any human being, Negro or white, should be forced to run a gamut of blood and terror in order to get his constitutional rights. That is too great a price to pay for the legal principle that before a state prisoner can get federal relief he must exhaust his state

remedies. The enlightened view is indeed the other way. See *Johnson* v. *Dye,* 175 F. 2d 250 (which unhappily the Court reversed, 338 U. S. 864); *Johnson* v. *Matthews,* 86 U. S. App. D. C. 376, 383–386, 182 F. 2d 677, 684–687; *Commonwealth* v. *Superintendent of County Prison,* 152 Pa. Super. 167, 31 A. 2d 576.

Certainly there can be no solid objection to the use of habeas corpus to test the legality of the treatment of a prisoner who has been lawfully convicted. In *Cochran* v. *Kansas,* 316 U. S. 255, 258, habeas corpus was used to challenge the legality of the practice of prison officials in denying a convict the opportunity of presenting appeal papers to a higher court. And see *In re Bonner,* 151 U. S. 242. Such an act of discrimination against a prisoner was a violation of the Equal Protection Clause of the Fourteenth Amendment. The infliction of "cruel and unusual punishments" against the command of the Eighth Amendment is a violation of the Due Process Clause of the Fourteenth Amendment, whether that clause be construed as incorporating the entire Bill of Rights or only some of its guaranties. See *Adamson* v. *California,* 332 U. S. 46. Even under the latter and more restricted view, the punishments inflicted here are so shocking as to violate the standards of decency implicit in our system of jurisprudence. Cf. *Francis* v. *Resweber,* 329 U. S. 459.

The Court of Appeals should be sustained in its action in giving respondent an opportunity to prove his charges. If they are established, respondent should be discharged from custody and saved the ordeal of enduring torture and risking death in order to protect his constitutional rights.*

---

*The requirements of 28 U. S. C. § 2241 (c) regulating the use of habeas corpus are met since the charges, if proved, would result in a return of respondent to Alabama to a "custody in violation of the Constitution" of the United States.