26 N.J. Super. 173 (1953)
97 A.2d 507
IN THE MATTER OF THE APPLICATION OF JESSE DUKES, ALSO KNOWN AS SIM OR SAM DUKES, FOR A WRIT OF HABEAS CORPUS.
Superior Court of New Jersey, Appellate Division.
Argued June 1, 1953.
Decided June 15, 1953.
*174 Before Judges GOLDMANN, SMALLEY and SCHETTINO.
Mr. Mendon Morrill argued the cause for petitioner-appellant (Messrs. Cole, Morrill & Nadel, attorneys).
Mr. Donald G. Collester, County Prosecutor, argued the cause for respondent.
The opinion of the court was delivered by SCHETTINO, J.A.D. (temporarily assigned).
This is an appeal from an order discharging a writ of habeas corpus.
Upon the demand of the Governor of Georgia, proceedings were here instituted resulting in the arrest of appellant under *175 a warrant signed by our Governor pursuant to N.J.S. 2A:160-15. The habeas corpus complaint followed. Appellant, in the trial court and here, was ably represented by assigned counsel.
Appellant admits that on May 14, 1940, he was sentenced to hard labor for three to five years on each of five indictments charging larceny of automobiles, sentences to run consecutively; that he escaped from confinement on January 23, 1952, and fled to New Jersey. He seeks freedom on the ground that his constitutional rights were violated in the proceedings which resulted in these sentences and that, if returned to Georgia, his rights will be further violated by cruel and inhuman treatment and a denial of an opportunity to assert his constitutional claims in the courts of Georgia and in the federal courts sitting therein.
Appellant testified that he was 12 years of age at the time of the alleged crimes and his sentence therefor. Upon objection sustained, he offered to prove that he was arrested at about 1:00 o'clock in the morning; that at about 8:30 or 9 o'clock that morning he waived arraignment and pleaded guilty to the five indictments (which are undated); that without advice of counsel or friend, but at the suggestion of a jailor or warden, he entered the pleas and was immediately sentenced. He offered further to prove that he was subjected to brutal treatment while in confinement in Georgia, and that, if returned, he would be similarly treated and unable to obtain counsel to represent him in an attack upon the legality of his confinement.
The scope of judicial inquiry in these matters was comprehensively discussed in In re Cohen, 23 N.J. Super. 209 (App. Div. 1952), affirmed on opinion below in 12 N.J. 362 (May 25, 1953). Although the precise issues here advanced were not presented in that case, yet the thesis of the opinion precludes consideration of the proffered attack.
In Sweeney v. Woodall, 344 U.S. 86, 73 S.Ct. 139, 97 L.Ed. 86 (1952), a fugitive, invoking the Eighth and Fourteenth Amendments, asserted his past confinement had amounted to cruel and unusual punishment, and that any *176 future confinement administered by the demanding state would similarly be in violation of rights secured to him under the Federal Constitution. The Supreme Court said:
"By resort to a form of `self help,' respondent has changed his status from that of a prisoner of Alabama to that of a fugitive from Alabama. But this should not affect the authority of the Alabama courts to determine the validity of his imprisonment in Alabama. The scheme of interstate rendition, as set forth in both the Constitution and the statutes which Congress has enacted to implement the Constitution, contemplates the prompt return of a fugitive from justice as soon as the state from which he fled demands him; these provisions do not contemplate an appearance by Alabama in respondent's asylum to defend against the claimed abuses of its prison system. Considerations fundamental to our federal system require that the prisoner test the claimed unconstitutionality of his treatment by Alabama in the courts of that State. Respondent should be required to initiate his suit in the courts of Alabama, where all parties may be heard, where all pertinent testimony will be readily available and where suitable relief, if any is necessary, may be fashioned."
The violations of constitutional rights here urged are in part identical in law with those considered in Sweeney v. Woodall. Additionally, appellant urges denial of constitutional rights in the judicial proceedings resulting in the convictions. Appellant concedes that the principle of Sweeney v. Woodall encompasses as well those further challenges, and we see no basis for differentiation. See Johnson v. Matthews, 82 U.S. App. D.C. 376, 182 F.2d 677 (C.A.D.C. 1950), certiorari denied 340 U.S. 828, 71 S.Ct. 65, 95 L.Ed. 608 (1950).
Appellant, however, urges that Sweeney v. Woodall recognizes a right to prove that he will be denied an opportunity for relief in Georgia. He refers to the statement in the opinion that "Respondent makes no showing that relief is unavailable to him in the courts of Alabama," and to the observation in the concurring opinion of Mr. Justice Frankfurter:
"I join in the Court's opinion because I agree that due regard for the relation of the States, one to another, in our federal system and for that of the courts of the United States to those of the *177 States requires that claims even as serious as those here urged first be raised in the courts of the demanding State. Even so, it is appropriate to emphasize that in this case there is no suggestion in the application for habeas corpus that the prisoner would be without opportunity to resort to the courts of Alabama for protection of his constitutional rights upon his return to Alabama. We cannot assume unlawful action of the prison officials which would prevent the petitioner from invoking the aid of the local courts nor readily open the door to such a claim. Compare Cochran v. State of Kansas, 316 U.S. 255, 62 S.Ct. 1068, 86 L.Ed. 1453. Our federal system presupposes confidence that a demanding State will not exploit the action of an asylum State by indulging in outlawed conduct to a returned fugitive from justice." (Italics ours.)
Appellant concedes that the courts of Georgia are open for relief, Wilcoxon v. Aldredge, 192 Ga. 634, 15 S.E.2d 873, 146 A.L.R. 365 (Sup. Ct. 1941), but contends that the quoted portions of the Sweeney opinion envision an attack in the state of asylum based upon proof that his admitted right to seek the aid of the Georgia courts is illusory because access would be frustrated by prison officials. We need not consider whether the Sweeney case contemplates an inquiry of that kind in the state of asylum, since the proffered proof, if accepted, could not justify the finding sought. In essence appellant offered to testify that during his confinement he approached the warden to speak to him and "was beaten severely with a hose without an opportunity to tell the warden what he wanted to see him about"; that by reason of this and other maltreatment, he would fear to ask for an opportunity to seek counsel; and additionally that he was without funds to retain counsel. It is apparent that appellant's testimony, if received, could amount to nothing more than conjecture on his part insofar as the future behavior of prison officials is concerned, plus a claim that he could not afford counsel coupled presumably with the supposition that none would be available to him. Our courts would not be justified in concluding from such testimony that administrative officials of the State of Georgia would not respect their constitutional obligations, or that the courts of that state would be any less zealous than ours in upholding *178 the rights of appellant. See Wilcoxon v. Aldredge, supra. As Mr. Justice Frankfurter said in the Sweeney case, "Our federal system presupposes confidence that a demanding State will not exploit the action of an asylum State by indulging in outlawed conduct to a returned fugitive from justice."
The judgment is accordingly affirmed.