**Jerome MARTIN, Appellant,**

**v.**

**STATE OF MARYLAND, Appellee.**

**No. 6137.**

District of Columbia Court of Appeals.

Argued Jan. 27, 1972.

Decided Feb. 11, 1972.

---

6. D.C.Code 1967, § 17–305 (Supp. IV, 1971).

Alan C. Campbell, Washington, D. C., for appellant.

Lester B. Seidel, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry and Oscar Altshuler, Asst. U. S. Attys., were on the brief, for appellee. Robert D. Zsalman and Barry W. Levine, Asst. U. S. Attys., also entered appearances for appellee.

Before GALLAGHER, NEBEKER and YEAGLEY, Associate Judges.

YEAGLEY, Associate Judge:

This is an appeal from an order of the Chief Judge of the Superior Court ordering the extradition of the appellant to the State of Maryland in accordance with the new provisions for extradition in the D.C. Code.[1]

Appellant had been arrested on August 24, 1971 on a warrant charging him with being a fugitive from justice from the State of Maryland where he was wanted to answer to a charge of robbery with a dangerous weapon. The court released him on a $5,000 bond, and an extradition hearing was scheduled for September 22, 1971. He was indicted on August 27, 1971, by a Charles County, Maryland grand jury *inter alia,* for robbery with a deadly weapon on March 3, 1971.

Appellant did not challenge eyewitness testimony that he was identical to the Jerome Martin named in the Maryland indictment. Neither was an issue raised as to

1. D.C.Code 1967, § 23–704 (Supp. IV, 1971).

whether he was a fugitive from Maryland on this charge.

This appeal stems from the refusal of the Chief Judge of the Superior Court to hold what in effect would have been a suppression hearing attacking the extradition and arrest as tainted. Appellant contended that prior to the issuance of the Maryland extradition warrant District of Columbia authorities had provided the State of Maryland with evidence of his complicity that had been seized from his possession on the occasion of an illegal arrest of appellant by District of Columbia police on August 19, 1971 on a charge of unauthorized use of a motor vehicle. This charge was nolle prossed on August 24, and the same day the Maryland warrant was issued and served.

The question presented is whether, as appellant contends, the Chief Judge of the Superior Court, before ordering extradition should have held a hearing on the issue of whether there was probable cause for the earlier arrest; whether evidence was illegally seized at that time; whether the Maryland indictment was the fruit of the illegal arrest and if so should it be excluded from evidence at the extradition hearing?

Appellant contended that such a hearing was necessary in view of D.C.Code 1967, § 23–704(d) (Supp. IV, 1971) which provides:

> If the person or his counsel shall state that he desires to test the legality of the person's arrest, the chief judge shall hold a hearing to determine whether the person shall be delivered over as demanded. At the hearing, the person shall have the same rights to challenge his detention and extradition as if the hearing were upon a writ of habeas corpus.

Appellant relies particularly on the language "to test the legality of the person's arrest".

That subsection together with subsection (c) differs from the earlier provision, D. C.Code 1967, § 23–401(c), only in that under the 1967 provision a person desiring "to test the legality of his arrest" was to proceed by habeas corpus whereas the new provision states that the Chief Judge shall thereupon hold a hearing wherein the accused shall have the same rights as in habeas corpus proceedings.

Since the legislative history of the latter provision does not appear to be to the contrary we shall be guided by judicial interpretation of the former and comparable statutes.

We do not know the circumstances surrounding petitioner's earlier arrest and the ensuing search, but for the purposes of the question here raised assume the illegality of both. Neither do we know what, if any, independent or untainted evidence the State of Maryland may have to connect appellant with the crime charged.

It is generally recognized that to support a rendition of the accused by the asylum state to the demanding state, it must be shown that (1) he is the individual named in the writ of extradition; (2) he is substantially charged with a crime in the demanding state and (3) he is a fugitive, which is to say he was in the demanding state when the crime was committed. Bruzaud v. Matthews, 93 U.S.App.D.C. 47, 48, 207 F.2d 25, 26 (1953); Johnson v. Matthews, 86 U.S.App.D.C. 376, 378, 182 F.2d 677, 679, cert. denied, 340 U.S. 828, 71 S. Ct. 65, 95 L.Ed. 608 (1950).

The constitutional provision regarding extradition is clear and carries no implication that the asylum state is to consider other issues.

> A person charged in any State . . . who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.[2]

Nor did the Congress in adopting our extradition statute indicate that the nature

---

2. U.S.Const. art. IV, § 2, cl. 2.

of the hearing should be any more than what has been required historically.

At the outset the statute provides that on an appropriate request for extradition the Chief Judge of the Superior Court shall cause the fugitive to be apprehended and delivered up "in the same manner and under the same regulations as the executive authority of a State is required to do".[3]

In performing his duties of extradition under subparagraph (a) the Chief Judge is carrying out functions of the executive. In conducting the hearing provided for in subparagraph (d) (quoted *supra*) he shall give the detainee the same rights to challenge his detention and extradition as on a writ of habeas corpus. No intent is expressed to expand the proceedings beyond the aforementioned issues attendant to extradition proceedings. We know of no authority holding that issues surrounding the person's previous arrest and the possible suppression of evidence there seized are proper subjects of consideration at an extradition proceeding and appellant cites none.

It has been held, for example, that a person's guilt or innocence is not the subject of inquiry on extradition. United States ex rel. Vitiello v. Flood, 374 F.2d 554, 556 (2d Cir. 1967).

Nor will courts in the asylum state judge the adequacy of the demanding state's indictment. Blevins v. Snyder, 57 App.D.C. 300, 22 F.2d 876 (1927); Snyder v. Hunter, 56 App.D.C. 41, 8 F.2d 902 (1925). Nor will they consider issues which may appropriately be raised at trial. Brown v. Ward, 107 U.S.App.D.C. 220, 275 F.2d 884 (1960); Bruzaud v. Matthews, *supra.*

Similarly, it has been held that a fugitive's claim that further punishment in the state from which he had fled would constitute cruel and unusual punishment cannot be considered at an extradition hearing. Sweeney v. Woodall, 344 U.S. 86, 89, 73 S.Ct. 139, 97 L.Ed. 114 (1952).

An extradition proceeding is not a criminal trial but is civil in nature and where the accused sought at such a hearing on fifth amendment grounds to obtain an order suppressing an admission he had made to the apprehending officer in the asylum state to the effect that he had been in the demanding state on the date of the offense, the Second Circuit Court of Appeals in affirming the District Court's dismissal of the petition for a writ of habeas corpus said:

> . . . We conclude, however, that *Miranda* does not apply to rendition proceedings or hearings on petition for [writ of] habeas corpus which are incident thereto. [United States ex rel. Vitiello v. Flood, *supra,* 374 F.2d at 557.]

In the instant case appellant's contention, aimed at the exclusion of the Maryland indictment at the extradition hearing would, if granted, amount to a refusal to honor Maryland's request for extradition. To sustain the appellant on this ground would defeat the historic purposes of extradition and deprive the courts of the demanding state of an opportunity to determine the truth of the charges.

Appellant's reliance on State ex rel. Foster v. Uttech, 31 Wis.2d 664, 143 N.W.2d 500, cert. denied, Uttech v. Foster, 385 U.S. 956, 87 S.Ct. 392, 17 L.Ed.2d 303 (1966) is misplaced. There the documents issued by the demanding state were defective on their face. That is not the situation here where the documents have been found to be in order.

Conceding, for the purpose of argument, that the evidence forwarded to Maryland had been seized in the course of an illegal arrest in the District of Columbia, the remedy is the suppression of that evidence (which is now in Maryland) and not the ignoring by our courts of a Maryland indictment that is valid on its face. The remedy for illegally seized evidence does not extend "to barring the prosecution al-

---

3. D.C.Code 1967, § 23-704(a) (Supp. IV, 1971).

together." United States v. Blue, 384 U.S. 251, 255, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966).

The defendant will have the same opportunity to assert his rights and test the legality of his earlier arrest in the courts of Maryland as he would have in a trial here, whether by pretrial motion or by objections to the introduction of evidence.[4] If certain evidence should be suppressed, we assume, of course, the Maryland Court will suppress it, but for aught we know the indictment may stand on an abundance of untainted evidence warranting the submission of the question of guilt to a jury. Such issues must be resolved by the trial court.

Affirmed.

4. Both Maryland and the District of Columbia have adopted the Uniform Act to Secure the Attendance of Witnesses. Md. Code (1971 Repl. Vol.) Art. 27, § 617–23; D.C.Code 1967, § 23–801–04.