## Commonwealth v. Walker

*John G. Siegle, Assistant District Attorney*, for Commonwealth.

*Charles Guerin, Jr.,* and *John Rogers Carroll,* for defendant.

McGOVERN, *J.*, June 4, 1974—Joseph H. Guerin has filed a petition for a writ of habeas corpus requesting his discharge, alleging, inter alia: that the Interstate Agreement on Detainers, Act of September 8, 1959, P.L. 829 (No. 324), sec. 1, 19 P.S. §1431 et seq., is an unconstitutional act violative of the due process protections guaranteed by the Federal Constitution; that the official conduct pursuant to that act denied defendant his right to due process; that officials failed to conform to the requirements of the act; and, finally, that California has declared the reciprocal act unconstitutional. Joseph H. Guerin, apparently serving a life sentence in the State of California, was, on or about November 28, 1973, brought to Pennsylvania pur-

suant to the Interstate Agreement on Detainers, supra. The States of Pennsylvania and California have passed complementary statutes. Petitioner on September 10, 1973, wrote to the District Attorney of Delaware County requesting a "Writ in Mandamus" compelling the district attorney to bring petitioner to Delaware County for disposition of pending prosecution. Petitioner, on October 4, 1973, by letter, communicated with the Governor of California, requesting that petitioner be given a hearing before removal to any other State. Petitioner, on October 16, 1973, filed a "Writ of Prohibition" in California demanding that he not be removed to Pennsylvania. Petitioner further, on November 28, 1973, filed a petition for an injunction against his removal to the Commonwealth of Pennsylvania.

Petitioner, Joseph H. Guerin, was brought to the Commonwealth of Pennsylvania on November 28, 1973, was subsequently tried and acquitted of all charges. He then, on February 1, 1974, filed this petition for writ of habeas corpus, requesting release, alleging the grounds above stated. Hearings were held pursuant to the said petition on February 8, and February 11, 1974, after which this court entered an order dismissing the petition for want of jurisdiction. Petitioner appealed to the Superior Court of Pennsylvania.

The issues raised by this petition and the presentation of this case are interesting in light of the trends of American jurisprudence. There is, however, initially the fundamental issue of whether or not this court possesses the requisite jurisdiction to consider the issues raised and to grant appropriate relief if warranted. We have decided that this court lacks such jurisdiction and that the appropriate

jurisdiction to hear and dispose of these issues is that of the sending State, California.

It is clear, at the outset, that the Commonwealth of Pennsylvania, prior to November 28, 1973, had no jurisdiction over the person of Joseph Guerin. The Commonwealth then, in an effort to orderly dispose of the outstanding indictments against this defendant, proceeded pursuant to the statutes and agreement on Detainers to obtain jurisdiction of defendant. The jurisdiction so exercised must be defined by the said statute. It is helpful, we believe, to distinguish between an attack upon the jurisdiction generally exercised by a State, and attack upon limited or particular jurisdiction which is subordinate to or subject to such a principal or dominant jurisdictional right. The statute in question treats the matter as being one involving the right to permanent custody as distinguished from the right to temporary custody. Witness article V of the Agreement on Detainers, Act of September 8, 1959, P.L. 829, 19 P.S. §1431, art. V(d):

"The temporary custody referred to in this agreement shall be only for the purpose of permitting prosecution on the charge or charges contained in one or more untried indictments . . . which form the basis of the detainer . . . or for prosecution on any other charge or charges arising out of the same transaction. Except for his attendance at court while being transported to or from any place at which his presence may be required, the prisoner shall be held in a suitable jail or other facility regularly used for persons awaiting prosecution."

Further clarifying this distinction is subparagraph (g) of the same article of that Act providing:

"For all purposes other than that for which temporary custody as provided in this agreement is exercised, the prisoner shall be deemed to remain in the custody of and subject to the jurisdiction of the sending state."

The act further provides, as though to preclude any misunderstanding, in article V(e):

"At the *earliest practicable time* consonant with the purposes of this agreement, the prisoner shall be returned to the sending state."

The act, of course, contains repeated references to this distinction and a reading of the entire act leads one logically and irresistably to the conclusion that the aforestated distinction was indeed one intended by the act and, therefore, the receiving State, Pennsylvania in this instance, had "temporary jurisdiction" for the purposes of prosecution only.

We are unable to locate controlling or persuasive authority concerning either the statute or the Interstate Agreement on Detainers; thus the closest judicial assistance apparently arises from decisions pursuant to the Uniform Extradition Act. The distinction legally, of course, is clear that under the extradition procedure, the State of asylum acquires jurisdiction for the limited purpose of ascertaining whether or not the demanding State has sufficiently justified its right to have defendant returned there for trial. Whereas under the detainer act, insofar as the present situation is concerned, the demanding or receiving State has defendant for the specifically limited purpose of trial. But we believe that it is the obvious intendment of the Uniform Extradition Act and statements of courts interpreting that act, that the scope of the hearing be

restricted as much as possible to the justification requiring returning of defendant to the demanding State and, as the Supreme Court of Pennsylvania said in the matter of Commonwealth ex rel. Hatton v. Dye, 373 Pa. 502, 507, 96 A. 2d 127, 129 (1953):

"If relator's rights under the United States Constitution have been violated, he must exhaust his remedy in the state where the alleged violation has occurred, and in the event that he is there unsuccessful in obtaining redress, he may then bring his grievance before the Federal Courts."

The same court clearly stated that the Supreme Court, as with the court below, lacked jurisdiction to hear matters beyond the pure arrest and extradition process in this State. So, it is our opinion with the Agreement on Detainers that, by its specific provision, the Commonwealth of Pennsylvania lacked jurisdiction to consider matters extending beyond that purpose for which defendant has been delivered, i.e., trial. The analogy to the case at hand taken from the language used in the extradition cases appears to be clearly apposite in that the rights of an accused are protected at every stage; however, an attack based upon alleged violation of such right ought to occur in the jurisdiction wherein the alleged violation occurred and, at least in the case of the detainer act, in the jurisdiction maintaining dominant custody. This leads us to the conclusion that the only legitimate tack an accused may take in the receiving State would be upon that exercise of temporary jurisdiction pertaining to his presence for trial.

It should be noted, at this point, that the receiving State can never exercise jurisdiction until the dominant or sending State has first made a jurisdictional decision (to deliver the accused to a re-

questing and potential receiving State). Thus, all of the considerations pertinent to such a temporary release of custody ought to be taken in that jurisdiction where the first and principal act temporarily releasing jurisdiction will first occur. California is that jurisdiction in the case at bar.

Similar guiding language can be found from the United States Supreme Court where, again in issues involving the extradition of fugitives, a fugitive has asked the Federal court to pass upon the constitutionality of the fugitive's incarceration in the demanding State while the accused is before the bar in the asylum or sending State. The United States Supreme Court, in holding that any such issue should be decided in the jurisdiction which is attacked (the demanding State in that situation), has indicated that the scheme of interstate rendition as set forth in constitutional and statutory law, contemplates prompt disposition, the orderly and fair handling of criminal prosecution and jurisdictional, as well as constitutional, attacks must be maintained in the jurisdiction wherein the alleged improper conduct or acts have occurred. The court has also indicated that a respondent ought to initiate his action in the courts where all parties may be heard, where relevant testimony is available and where suitable release may be fashioned: Sweeney v. Woodall, 344 U.S. 86, 73 S. Ct. 139, 97 L. Ed. 114 (1952); Dye v. Johnson, 338 U.S. 864, 896, 70 S. Ct. 146, 94 L. Ed. 530 (1949); Ex parte Hawk, 321 U.S. 114, 64 S. Ct. 448, 88 L. Ed. 572 (1944).

Returning to the analogy to the case at bar, where the petitioner's attack rests upon the propriety and validity of the transferral of jurisdiction by the State of California to the Commonwealth of Pennsylvania, petitioner does not allege that the restricted jurisdiction for the purposes of trial

was improperly exercised, but rather alleges that jurisdiction should not initially have been relinquished by the State of California. The acting parties, in rendering a decision to release that jurisdiction, are indeed in the State of California and, as hereinabove noted, it was necessary that California act before Pennsylvania ever enter the picture from a jurisdictional point of view. It is finally noted that the relief requested by petitioner is release from custody which is contrary to the Agreement on Detainers and the statute in Pennsylvania as well as in California; should that practice receive approbation, the agreement providing for the receiving State's jurisdiction, would be clearly breached. It should be further stated that should petitioner's relief be granted by a Pennsylvania court, we would have the anomalous situation of a Pennsylvania court effectively terminating both jurisdiction and custody of the sending State without testing the propriety of such jurisdiction and custody and, indeed, without possessing the means to so test. Full faith and credit certainly requires something more than such an ex parte disposition.

The practical effect, of course, of a receiving State entering into the considerations requested by this petitioner, would be the total undermining of the expressed purposes of the act intending the orderly disposition of outstanding charges against the prisoner, the prompt trial for the benefit of society as well as defendant. It should further be noted that, if there is to be any honoring of interstate agreements, it is difficult to understand how the clear provisions of the Agreement on Detainers can be contravened in such a manner as to refuse to

return a prisoner once the receiving State's purposes have been accomplished, even though the agreement specifically requires such return. We can find no overriding public policy to the contrary. Indeed, we find that the act adequately provides for the orderly disposition of criminal prosecutions which is a matter of high public importance and does not deprive defendant of appropriate attack to the improper exercise of jurisdiction by the sending State either in its maintenance of custody or in its intent to release temporary custody to a receiving State. Defendant's rights, as he himself in the matter at bar has well indicated, can be pursued in the State as well as Federal jurisdictions available at the point of incarceration within the sending State.

We have, after a thorough consideration of the testimony presented and the arguments of counsel in accordance with the foregoing opinion, dismissed the petition of Joseph H. Guerin, requesting a writ of habeas corpus requesting discharge. All of the issues raised by petitioner can be appropriately and completely tested in the jurisdiction of the sending State. That jurisdiction is obviously paramount to the jurisdiction of the receiving State and official action must occur in the sending State's jurisdiction as a condition precedent to the exercise of any jurisdiction whatsoever by the receiving State. Pennsylvania is, therefore, without jurisdiction to consider the issues raised by petitioner and since there appears in this record no attack involving a substantial constitutional right as to the purposes of the exercise of Pennsylvania's temporary jurisdiction, the petition is denied as aforesaid and the prisoner should be forthwith returned to the jurisdiction of the sending State, California.