PER CURIAM.
By these consolidated appeals, Jorge Salazar challenges an order denying writ of habeas corpus and ordering him remanded for extradition to the state of Michigan.
The record reflects that a governor’s warrant of extradition was issued by the Governor of Florida authorizing the arrest of Jorge Salazar and his surrender to proper authorities of the state of Michigan. The warrant was issued, pursuant to Sections 941.03 and 941.06, Florida Statutes (1975), upon the requisition of the Governor of Michigan. The basis for the requisition was a duly authenticated complaint affidavit, together with warrant issued thereon, charging Salazar with a criminal violation of Section 565.827, Mich.Comp.L. (1970),[1] a part of the Michigan Land Sales Act, Sections 565.801, et seq., Mich.Comp.L. (1970).[2]
*147 The thrust of the charge is that Salazar, without physically being in the state of Michigan, placed a telephone call from Florida to a Michigan resident, during which Salazar made various false misrepresentations concerning real estate located in Florida, with the intent of soliciting a sale of the real estate to the Michigan complainant. These actions, it is charged, exposed Salazar to penal liability in Michigan under the Michigan Land Sales Act, supra, which applies to land “wherever located . which is divided . . . into 25 or more lots.” See Section 565.802, Mich.Comp.L. (1970), n. 2, supra.
Salazar filed a petition for writ of habeas corpus in the circuit court for Dade County, Florida. He did not complain that he was charged under the laws of Michigan. Rather, he attacked the power of Michigan to enact legislation regulating the alienation of realty not located in Michigan by a person who never physically entered Michigan. He contends that it is unconstitutional to permit extradition of persons who have never been physically present in the demanding state. While this does present an interesting legal question, it has no bearing on this court’s determination of whether or not Salazar should be extradited to Michigan, as that state, by legislation, has proscribed Salazar’s actions and made them a crime. Having been charged with a crime under the laws of Michigan, Salazar is not entitled to have this court construe Michigan’s laws. It would be improper for this court to make a determination in these proceedings as to whether the Michigan statute under which he is charged, violates principles of constitutional due process, as Salazar would have us do.
Generally, the state and Federal courts and executive officers in the asylum state should not otherwise concern themselves with the legality of the criminal prosecution pending against the fugitive in the demanding state. It is not for courts in the asylum state to inquire into the constitutionality of a sister state’s criminal justice system; the constitutional rights of the accused are sure to be safeguarded by the state and Federal courts of the demanding jurisdiction. See Sweeney v. Woodall, 344 U.S. 86, 73 S.Ct. 139, 97 L.Ed. 139 (1952); Garrison v. Smith, 413 F.Supp. 747 (N.D.Miss.1976).
In the order denying writ of habe-as corpus, the court found that the demand of the Governor of Michigan and all attached documents were sufficient to charge Salazar with an extraditable crime under the laws of Michigan and were a sufficient basis for the extradition of Salazar to Michigan. We agree that Salazar was sufficiently charged with a violation of Michigan law to entitle that state to extradite him. A crime under the laws of the state of Michigan is extraditable in the state of Florida. See Ennist v. Baden, 158 Fla. 141, 28 So.2d 160 (1946); Section 941.06, Florida Statutes (1975).
Affirmed.

. Section 565.827, Mich.Comp.L. (1970), provides:
Every developer or agent of a developer who authorizes, directs, or aids in the publication, advertisement, distribution, or circu-larization of a false statement or misrepresentation, made with knowledge of its falsity concerning a subdivision offered for disposition or who knowingly fails to comply with the terms of a final cease and desist order and every person with knowledge that an advertisement, pamphlet, prospectus, or letter concerning a subdivision contains any written statement that is false or fraudulent, who issues, circulates, publishes, or distributes the same or causes the same to be issued, circulated, published, or distributed, or who knowingly fails to comply with the terms of a final cease and desist order, is guilty of a felony, and may be fined not more than $25,000.00 or imprisoned not more than 10 years or both. Each violation constitutes a separate offense.

. Other pertinent portions of the Michigan Land Sales Act, Sections 565.801, et seq., Mich. Comp.L. (1970), provide:
.802(n) “Subdivision” and “subdivided land” means any land, wherever located, improved or unimproved, which is divided or proposed to be divided for the purpose of disposition into 25 or more lots, parcels, units or interest, and includes any portion thereof. Subdivided lands include land located outside of the state which is promoted by mail, telephone calls, solicitation or advertisements within or directed into the state.
*147 .832(c) Any offer of disposition of subdivided lands is made in this state, whether or not the offeror or offeree is then present in this state, if the offer originates within this state or is directed by the offeror to a person or place in this state, and received by the person or at the place to which it is directed.