OPINION OF THE COURT

Per Curiam.

Relator commenced this habeas corpus proceeding to resist her extradition to the State of North Carolina. She concedes that the requisite jurisdictional requirements have been adequately demonstrated (see People ex rel. Higley v Millspaw, 281 NY 441, 445) but contends that if forced to return to North Carolina her constitutional rights will be violated and she will be subjected to cruel and inhuman treatment by correctional officials of that State.
Interstate extradition is mandated by article IV (§ 2, cl 2) of the Federal Constitution (Commonwealth of Kentucky v Dennison, 65 US [24 How] 66), which provides that a "Person charged in any State with Treason, Felony or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.” The execution of this provision is provided for under Federal (US Code, tit 18, § 3182) and State statutes (CPL 570.02 et seq.), and no contention is made that any of the applicable provisions have not been complied with. The only contention here is that relator will be subjected to unconstitutional treatment by the demanding State. In all but the most unusual circumstances such prospective claims may not be invoked in an asylum State for the purpose of preventing extradition, and when faced with such prospective claims the court need not embark upon an inquiry of their validity (see People ex rel. Wendt v Harkness, 52 AD2d 678, mot for lv to app den 40 NY2d 804); it is not within the competency of the New York courts to determine whether the prison officials of a sister State will, prospectively, deprive relator of her constitutional rights. The executive responsibility may be another matter, but on that we do not pass. The scheme of extradition, as set forth in both the Federal Constitution and the statutes implementing it, contemplates the prompt return of a fugitive as soon as the State from which she fled appropriately demands her return. These provisions would seem to preclude judicial review in the asylum State of claimed, potential, constitutional abuses. "Considerations fundamental to our federal system require *827 that the prisoner test the claimed unconstitutionality of [her] treatment by [the demanding State] in the courts of that State” (Sweeney v Woodall, 344 US 86, 90). In short, one alleging present or future improper activity in another State is under the necessity of seeking redress in accordance with law and in the forum in which the alleged improprieties will occur. The necessities of our Federal system require this result. It may be that if there were, as is not true here, factual affidavits reflecting clear evidence that gross irreparable harm would result if the petition" is denied, a judicial hearing might be envisaged. Even then there would have to be persuasive demonstration that effective access to State and Federal courts in the demanding State would not be available. Unless ready to interfere with the constitutional mandate, and to disregard the applicable Federal and State statutes, the courts of this State may not routinely sit in judgment over acts performed by officials in our sister States nor may they give sanctuary to a fugitive of another State without compelling cause.
Accordingly, the order of the Appellate Division should be affirmed, without costs. This determination shall not take effect for 10 days.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur in Per Curiam opinion.
Order affirmed, without costs. The stay previously granted by this court is continued until May 19, 1978, the date on which the remittitur of this court shall issue.