UNITED STATES of America ex rel. Joan LITTLE, Petitioner,

v.

William CIUROS, Jr., Commissioner of Correction of the City of New York, and Essie Murph, Superintendent, New York City Correctional Facility for Women, Respondents.

No. 78 Civ. 2231 (KTD).

United States District Court, S. D. New York.

May 18, 1978.

---

William M. Kunstler, Jerry Paul, Margaret L. Ratner, New York City, for petitioner by William M. Kunstler, New York City, of counsel.

Eugene Gold, Dist. Atty. for the County of Kings, Brooklyn, N. Y., for respondents by Helman R. Brook, Asst. Dist. Atty., Brooklyn, N. Y., of counsel.

## OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge.

This is a petition for a writ of habeas corpus brought pursuant to 28 U.S.C. §§ 2241(c)(3) and 2254(a) and (d)(6).

An understanding of the basic facts alleged by the petitioner is necessary so as to place in proper perspective the disposition of this petition by this Court. On June 8, 1974 the petitioner was convicted in North Carolina for breaking and entering three mobile homes in Washington and Chocowinty, North Carolina and stealing personal property valued at approximately $1,350. At the time petitioner was represented by counsel whose competence she has since attacked "in a federal habeas corpus proceeding to vacate her conviction which is presently pending in the United States District Court for the Eastern District of North Carolina." (Petition, p. 4) * Thereafter, Ms. Little, unable to meet bail, was confined to the Beauford County Jail. While there, she allegedly was sexually assaulted and stabbed her attacker, a jailer, who was found dead after petitioner had effected an escape from confinement. Petitioner was subsequently indicted for murder in the first degree. After a trial which gained much notoriety she was acquitted by a jury which reached its verdict after only 55 minutes, apparently concluding that the State had not carried its burden of proof beyond a reasonable doubt and possibly that the killing of the jailer was justifiable under the circumstances.

Some nine days after her initial escape, Ms. Little surrendered herself to the North Carolina Bureau of Investigation and eventually was released on bond. Following her acquittal on the murder charge, the North Carolina Court of Appeals affirmed her conviction on the breaking and entering charge. At this point she was remanded to the North Carolina Women's Correctional Center. Certiorari with respect to her breaking and entering conviction was thereafter denied by the Supreme Court of North Carolina.

The petitioner alleges that while incarcerated she was a model inmate but that the prison authorities refused her various privileges, including an early admission to a

work release program. It is also suggested by the petition that the North Carolina authorities wrongfully accused the petitioner of various infractions while incarcerated, harassed her, denied her adequate medical treatment, and refused to grant her parole. Supposedly because of this "cruel and inhuman treatment," the petitioner escaped and came to the State of New York.

The Governor of the State of North Carolina, pursuant to the United States Constitution Art. 4 § 2 cl. 2, a compact among the several sovereign states, and applicable federal and state statutes, demanded of the Governor of the State of New York that she be delivered up and removed to the State of North Carolina. There is absolutely no contention raised by the petition that the procedures followed by the executive authority of the State of North Carolina in seeking extradition were in any way deficient. The Governor of the State of New York apparently agreed and ordered that she be returned to North Carolina.

The petitioner immediately applied to the Supreme Court of the State of New York for a writ of habeas corpus. The writ was denied without a hearing. The sole ground advanced by the petitioner in support of her application was the cruel and unusual punishment that she would suffer if again incarcerated in North Carolina. This allegation was highlighted by her charge that she would be murdered if she was returned to prison in that state. Mr. Justice Scholnick denied the application and remanded the petitioner to the Department of Corrections of the State of New York for transportation to North Carolina. A stay was granted by the Appellate Division, Second Department, which thereafter affirmed the determination of Justice Scholnick (Shapiro, J., dissenting). On May 9, 1978, the New York State Court of Appeals affirmed the determination of Mr. Justice Scholnick in a per curiam decision, but granted a stay until May 19, 1978, apparently to permit the petitioner to bring on the instant challenge to her extradition and incarceration.

---

* Petitioner's counsel, at oral argument apparently was mistaken in denying the existence of such a petition thus making this the second

outstanding federal petition for habeas corpus relief.

■ The writ of habeas corpus has always been considered as extraordinary relief. *See, e. g., Hensley v. Municipal Court, San Jose-Milpitas Judicial District, Santa Clara County*, 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973); *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). Clearly to be entitled to such extraordinary relief, a petitioner must show that extraordinary circumstances warrant it.

The grounds advanced by the petitioner in the case at bar are three in number: (1) that the courts of the State of New York should have afforded her a hearing on her various claims; (2) that the courts of the State of New York should now release her on bail; and (3) that the dangers to her safety arising out of the extradition to North Carolina are so great as to render the entire process unconstitutional.

■ Federal habeas corpus relief pursuant to 28 U.S.C. § 2254 can be granted only when a state prisoner has been incarcerated in a manner repugnant to the fundamental rights guaranteed by the United States Constitution. Whether petitioner will be unconstitutionally incarcerated is the only issue properly before me.

■ Thus, the first two claims must fall of their own weight, since the state habeas proceedings were premised on applicable state law, and it is not for the federal courts to rewrite law on an *ad hoc* basis. Whether the state courts in considering the petitioner's allegations believed that they were such as to necessitate a hearing before the state courts is clearly a matter reserved to the state. It may well be that if the circumstances were different and I was sitting as a state court judge, I would have agreed with Justice Shapiro and held the hearing requested. But I am not, and I will not order the state to do so. Nor do I believe that the United States Constitution mandates a state having custody of a fugitive to grant bail, particularly in a situation where, as here, the courts of the demanding state apparently have thoroughly reviewed the underlying conviction and found it proper. Surely escape from state custody and flight into another jurisdiction cannot enlarge the rights of a convicted felon.

The third ground raised by the petitioner is the most difficult. It is alleged in the petition that Ms. Little will be in great danger of losing her life if she is returned to prison in North Carolina. The petition implies gross discrimination against the petitioner by the State of North Carolina not only because of her race but because of the tragic incident which brought about her murder prosecution and acquittal. That her prior treatment in prison in North Carolina was caused by these factors is also implied. The only support for the suggestion, however, that Ms. Little's life is in danger is an affidavit from a North Carolina attorney which attests that the attorney talked to "Inmate A" who advised that "Inmate X," upon learning of petitioner's escape, had threatened to kill petitioner when she was returned. No argument has been advanced to indicate why such double hearsay should be considered reliable. Although it was vaguely intimated at oral argument that prison officials in North Carolina induced "Inmate X," whose identity is unknown, to make such a threat, there is absolutely no factual basis, even considering the various allegations of the petition in the best possible light, for this Court to conclude that such is the case.

■ At argument it was also suggested that a prisoner would be willing to come to this Court and testify as to all of the facts and circumstances surrounding an alleged plot by the North Carolina prison guards to murder petitioner. It was fervently argued that the only reason this prisoner would not sign an affidavit concerning the alleged plot was fear of retaliation. However, no proffer was made as to the content and scope of the proposed testimony. The vague and generalized representation offered is simply an insufficient basis on which to grant petitioner a hearing on her underlying claims.

■ In any event, I do not believe that this Court can properly entertain this matter. The Supreme Court in *Sweeney v. Woodall*, 344 U.S. 86, 73 S.Ct. 139, 97 L.Ed.

114 (1952), has clearly held in an extradition situation that a fugitive from justice must challenge the constitutionality of his (or her) incarceration in the demanding state and not in the asylum state. The sparse law in this circuit has followed the Supreme Court mandate. *United States ex rel. Hammershoy v. Director of Conn. Corr. Ctr.*, 299 F.Supp. 1354, 1356 (D.Conn.1969) (Timbers, Ch. J.). *Hammershoy* recognized the possibility of a contrary rule on a showing of "very unusual facts," *id.*, presumably referring to the arguable intimation in *Sweeney* that such might be the result on a showing that relief is unavailable in the courts of the demanding state.

There is, however, no basis on which to conclude that the courts of the State of North Carolina would be unable to afford petitioner her relief, notwithstanding a vague suggestion in the petition to the contrary. Indeed, the fact that Ms. Little was acquitted on the murder charge in a North Carolina court would belie such a suggestion. Should there be any failure on the part of the North Carolina state courts to accept and apply the requirements of the Constitution of the United States, relief in the federal court sitting in the State of North Carolina is available.

To me the law is clear. It requires that the petition for the writ of habeas corpus be dismissed. At the hearing, the attorney for the petitioner requested a stay pending appeal in the event of an adverse determination. Since I believe that there is no probable cause for an appeal, I will not issue either the required certificate of probable cause (28 U.S.C. § 2253) or a stay.

SO ORDERED.